OPINIONS OF THE SUPREME COURT OF OHIO
**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Dayton Bar Association v. Marzocco.
[Cite as Dayton Bar Assn. v. Marzocco (1994),          Ohio
St.3d       .]
Attorneys at law -- Misconduct -- Indefinite suspension --
     Violating a Disciplinary Rule -- Engaging in conduct
     involving dishonesty, fraud, deceit or misrepresentation
     -- Conduct prejudicial to the administration of justice --
     Conduct which adversely affects fitness to practice law --
     Handling a legal matter not competent to handle and
     without adequate preparation -- Neglecting an entrusted
     legal matter -- Failing to promptly notify client of
     receipt of funds -- Failing to maintain complete records
     of all client funds -- Failing to promptly deliver funds
     to client.
     (No. 94-537 -- Submitted October 11, 1994 -- Decided
December 23, 1994.)
     On Certified Report by the Board of Commissioners on
Grievances and Discipline of the Supreme Court, No. 93-21.
     Relator, Dayton Bar Association, charged Ralph L. Marzocco
of Dayton, Ohio, Attorney Registration No. 0020072, with
mutiple counts of misconduct, involving violations of DR
1-102(A)(1) (violate a disciplinary rule); 1-102(A)(4)
(engaging in conduct involving dishonesty, fraud, deceit or
misrepresentation); 1-102(A)(5) (conduct prejudical to the
administration of justice; 1-102(A)(6) (conduct which adversely
affects fitness to practice law); 6-101(A)(1) (handling a legal
matter which he knows or should know he is not competent to
handle, without associating with a lawyer who is competent);
6-101(A)(2) (handling a legal matter without adequate
preparation);.  6-101(A)(3) (neglecting a legal matter
entrusted to him); 9-102(B)(1) (promptly notifying client of
receipt of funds, securies, or other properties); 9-102(B)(3)
(maintain complete records of all client funds, securities, or
other properties coming into his possession and rendering
appropriate accounts to client); and 9-102(B)(4) (promptly

paying or delivering to client, as requested, funds securities, or other properties in his possession). Respondent filed an answer denying the allegations of misconduct.

The matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") on October 8, 1993.

The panel found the charges against respondent arose from two transactions: the drafting and administration of a trust for Ellen Bolling and the handling of a patent application for the Tubis family.

The Bolling revocable trust, signed by Ellen Bolling on May 13, 1980, was funded in the amount of $64,677.95, consisting of $25,000 in proceeds from an Allstate Insurance policy on the life of Bolling's deceased husband, $17,583.79 in John Hancock Life Insurance policy proceeds, $10,032.44 in American Bankers Life Assurance policy proceeds, and $12,061.72 paid by First Federal Savings & Loan of Lynchburg, Virginia from the sale of her deceased husband's property.

The trust assets were deposited initially into a bank account, and invested in a Winters National Bank and Trust Company Certificate of Deposit on April 16, 1980. Some of these funds were then used to pay debts of Bolling's deceased husband and $27,728.92 was used by Bolling to buy a house on Troy Street in June of 1980. Twenty thousand dollars of the trust assets was invested in July 1980 in CDs in Hunter Savings Association, and in State Fidelity Savings and Loan Association. The balance of the trust assets was deposited into a savings account.

Respondent used estate funds to loan his brother, Robert Marzocco, $3,000 on August 7, 1980 and, after renewing the note, an additional $2,000 on November 7, 1980, both for ninety day-periods and both at twelve percent interest. He cashed the Hunter Savings CD and put $5,000 into the savings account on January 12, 1981 and loaned his brother an additional $5,000 for ninety days at twelve percent interest. Respondent then redeemed the State Fidelity Savings CD, and on January 16, 1981, bought a $10,000 Third National Bank and Trust Company of Dayton CD at 14.78 percent interest. On May 11, 1981 he loaned his brother an additional $3,000 for ninety days at twelve percent interest. Subsequently, the notes were each renewed for ninety days in the total amount of $13,000 with interest at fifteen percent.

Also, at Bolling's request, respondent loaned $12,000 from the trust to her friend, Juanita Mitchell. This loan, dated October 16, 1981, was secured by a mortgage on real estate owned by Mitchell. Payments were to be at the rate of $170 per month with a five-year terminal balloon payment, and with interest at seventeen per cent. Mitchell was obligated to maintain fire and extended coverage insurance, which she failed to do. The house subsequently was destroyed by fire.

Respondent's brother made one $2,500 payment toward principal, but made no interest payments after 1981. As of November 1991 respondent allowed his brother to consolidate the outstanding indebtedness to the trust with a single unsecured promissory note of $24,234.70 with interest at six percent due and payable on November 30, 1992. Respondent has never requested that his brother make payments on the note.

Bolling moved to Maryland in 1982 and until that time had received accountings from respondent. Respondent has refused, from 1982 through 1990, to furnish an accounting because, as he asserts, Bolling was "incompetent" and he felt that she would spend the money on drinking. Bolling suffered a stroke in 1986. Her daughter, Karen Titus, was appointed her guardian in Maryland in April 1987. Titus requested, but was unable to obtain, copies of her mother's will and trust agreement from respondent. Respondent continued to refuse, after the appointment of Titus, to supply her with copies of the will or trust agreement, or to furnish her with an accounting. Titus then hired attorney Thomas Baggott of Dayton who succeeded in obtaining the information.

Respondent asserts that he did not turn over trust assets to Bolling, because he felt she was incompetent, nor to her guardian, because Titus was "not an attorney."

The panel found that the respondent, as Bolling's lawyer, was responsibile for informing her of her rights under the trust agreement; and that she had the right to receive an annual accounting and to obtain the trust assets, upon written request. Respondent's responsibility, as trustee, was to prudently invest and protect the trust assets, to maintain arms-length dealings, and to comply with the terms of the trust agreement.

In late 1989, Gene Tubis, his wife and daughter, having invented a grocery store rack, contacted respondent to secure a patent for their invention. On May 21, 1990, after receiving an initial retainer fee and agreeing to perform the legal services for a certain additional fee plus expenses, respondent filed an application for a patent. However, respondent failed to remit the proper filing fee and upon notification from the patent office that the fee was insufficient but could be processed for an additional $75 received before July 21, 1990, failed to forward the additional money. The patent office then notified respondent that the application was considered abandoned. The patent office also instructed respondent regarding the proper procedure to obtain a consideration of the application. Respondent failed to follow those instructions and attempted to file a continuation application as of November 15, 1990 which was rejected by the patent office, as improper. In August 1991, the patent office determined that the continuation application was abandoned. On reconsideration in June 1992, the August 1991 decision was vacated and the first application was conditionally accepted for filing.

Donna Tubis, Gene Tubis's daughter, called the patent office in May 1992 and learned that the patent application had been abandoned because it had been "misfiled." This information had not been disclosed to the Tubis family. Respondent had told them earlier, however, he heard nothing from the patent office and was waiting for progress. In the meantime, the Tubis family has paid respondent a total of $1,625. Respondent contends that it was the responsibility of the patent office to keep him advised of the proper fees and had failed to do so, that the patent office procedures were improper, and that he was proceeding to challenge the filing-fee matter.

The panel found that respondent had violated the

Disciplinary Rules as charged in the complaint and recommended that he be indefinitely suspended from the practice of law. The panel recommended an indefinite suspension, based on these violations, as well as the inability of respondent to comprehend that his conduct violated the Disciplinary Rules, the blatant conflict of interest relative to his role as trustee and as attorney for Bolling, and the refusal of respondent to surrender trust assets to her.

The board adopted the findings of fact and conclusions of law of the panel and recommended that respondent be indefinitely suspended from the practice of law and further that the costs of these proceedings be taxed to the respondent.

Edward J. Dowd, for relator.

Ralph L. Marzocco, pro se.

Per Curiam. This court agrees with the findings and recommendation of the board. Respondent is hereby indefinitely suspended from the practice of law in Ohio. Costs taxed to respondent.

Judgment accordingly.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.